IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
OCT 2 1 2002

| | |
|---|---|
| AMSTED INDUSTRIES INCORPORATED, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 01 C 3336 |
| | ) |
| v. | ) Hon. Judge Zagel |
| | ) Mag. Judge Schenkier |
| BUCKEYE STEEL CASTINGS CO., | ) |
| | ) |
| Defendant. | ) |

**FILED**

m. OCT 1 8 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## PLAINTIFF AMSTED'S CLAIM CONSTRUCTION REPLY BRIEF

Pursuant to this Court's Scheduling Order dated January 9, 2002, Plaintiff Amsted

Industries Inc. ("Amsted") submits this Reply to assist the Court in construing disputed claim

terms of Amsted's U.S. Patent Nos. 5,752,564 ("the '564 patent") and 5,954,114 ("the '114

patent"). While Buckeye's Claim Construction Brief is long on rhetoric and inappropriate

commentary,[1] proper analysis and citations to the intrinsic record are glaringly absent. Amsted

has been working diligently to narrow the claim construction issues before this Court to

ultimately narrow the issues to present to the jury. In stark contrast, Buckeye seeks to expand

the number of issues before this Court. For example, Buckeye's voluminous "Claim

Construction Brief" inappropriately injects Buckeye's arguments as to virtually every aspect of

---

[1] Buckeye misleadingly suggests that Amsted's assertion of only 2 of 39 claims of the '564 patent is the result of Buckeye's litigation efforts. It is not. At the beginning of this litigation, Amsted alleged that Buckeye infringes only claim 38 of the '564 patent. (Ex. 1, Amsted's Response to Interrogatory No. 1). Of course, Buckeye need only infringe one claim of a patent in order to be liable for patent infringement. *Panduit Corp. v. Dennison Mfg. Co.*, 836 F.2d 1329, 1330 n.1 (Fed. Cir. 1987) ("One is liable for patent infringement if one claim be infringed."). Through limited discovery, Amsted was able to add asserted claims 2 and 39. (Ex. 2, Identification of Asserted Claims). Pending the inspection at Buckeye's manufacturing facilities, Amsted has chosen to focus on claims 38 and 39 of the '564 patent.

1



this case, including infringement and validity. The only issue appropriately before this Court is claim interpretation.

## I.     The '564 Patent

### A.     Claim 38

Despite its prior refusal to agree to Amsted's proposed interpretation of the claim terms "core having an outer surface," "core print," and "neck" in connection with the Joint Claim Construction Statement, Buckeye now apparently agrees with Amsted's proposed interpretation. The remaining disputes as to claim 38 relate to the interpretation of the claim terms "one-piece end core," "top member of the sideframe," "plurality of lightener openings," and the claimed method steps.

#### 1.     Amsted's Proposed Interpretation Does Not Read on Prior Art

Prior to presenting its own proposed claim interpretation, Buckeye incorrectly argues that Amsted's proposed interpretation invalidates claim 38 in light of the representative prior art cores shown in Figure 15 of the '564 patent. Buckeye's arguments are misplaced for two reasons: 1) the prior art set forth by Amsted in the Amsted '564 patent does not have the claimed "core print[2] having a neck"; and 2) patent validity is not an issue in a Markman hearing on claim construction.

---

[2] As an initial matter, Buckeye has not established that the prior art cores shown in Figure 15 show a core print under the parties' agreed-upon definition of "core print." Amsted's proposed definition of "core print", which is not disputed by Buckeye, is "an integral outward extension or protrusion from the outer surface of the one-piece end core that corresponds with an opening in the wall of the sideframe and provides support and proper positioning of the one-piece end core in the mold." (Amsted's Claim Construction Br., p. 13). In footnote 14 of Buckeye's Claim Construction Brief, p. 27, Buckeye contends that the parties' disagreements over terms, including the term "core print," are "over distinctions without a difference." As such, Buckeye presented no argument on this point. The self-serving Downes Declaration offers only a conclusion without analysis or foundation.

Figure 15 of the '564 patent does not show "a core print having a neck connecting the core outer surface and the core print body. . . .the neck having a perimeter inward of the core print body edge" as required by the claim. Amsted contends that the term "neck" refers to "a connecting component formed as an integral part of the one-piece end core, joining a core print body to the outer surface of the one-piece end core body. The connecting component will form an opening or hole in the sideframe casting, and the circumference of the connecting component will form an edge around the hole or opening in the sideframe casting." (Ex. J of Amsted's Claim Construction Brief,[3] Joint Claim Construction Statement, pp. 4-5).

Core 202 of Figure 15 does not include a neck/connecting component that joins a core print body to the outer surface of the one-piece end core body. Buckeye intentionally altered the drawings of the '564 patent. The drawing shown on page 21 of Buckeye's brief is extremely misleading because the area that Buckeye deems a "neck" <u>was drawn in by Buckeye's litigation/prosecution counsel</u>. In other words, the drawing relied on by Buckeye is not actually the core 202 of Figure 15, but is instead a fictional core



Figure 15 of the
'564 Patent (Detail)



Buckeye's
Fictional Art

---

[3] For purposes of simplicity, all exhibits identified using alphabetical letters were attached to Amsted's previously filed Claim Construction Brief. Reply exhibits are denoted with numbers.

dreamt up by Buckeye's litigation/prosecution counsel. It is clear that Buckeye's counsel added two lines to the drawing to induce this Court into believing that a neck exists.[4] This is completely improper. Figure 15 does not show a neck of any sort. Instead, Figure 15 simply shows a portion of a core extending out without a neck. Under Buckeye's construction, the "neck" and the "core print" are the same entity. This cannot be correct because it renders superfluous the claim term "neck." *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) (holding that a claim should not be construed in a manner that renders the claim language "meaningless or superfluous.").

In addition, Figure 15 shows three cores contributing to the protruding core body making the single lightener opening: cores 194, 196 and 202. Figure 15 does not show, as Buckeye alleges, a one-piece end core having a core print having a neck connecting the core outer surface and the core print body. The three cores, taken



Figure 15 of the '564 Patent

together, form a three-piece protruding core body that collectively forms a single lightener opening in the casting. The configuration of cores of Figure 15 is not the subject matter of claim 38 under any reasonable interpretation. This particularly so where the Patent Examiner allowed the claims to issue in view of Figure 15.

### 2. Buckeye's Interpretation of "One Piece End Core" is Legally Wrong

---

[4] Buried in paragraph 9 of the Downes declaration, Mr.Downes notes that "[i]n the slides in Exhibit A, the lines of the neck are representative and are not placed with precision." This key

Buckeye's interpretation of a "one-piece end core" is nonsensical. For example, Buckeye argues that a "one-piece end core" is "an end core as in Figure 15 of the patent and Figure 6 of the incorporated '986 patent. . . .It is an end core that makes up the whole of the end of the sideframe, as does the core in '564 patent Figure 15 and '986 patent Figure 15." (Buckeye Br., p. 22). Figure 15 of the '564 patent is a perspective view of the problematic prior art which uses many sideframe cores. Figure 6 of the '986 patent, which is not prior art, is labeled "one-piece core" and is fundamentally different than the multiple cores shown in Figure 15 of the '564 patent-in-suit.[5] Buckeye's interpretation is legally flawed.

Buckeye also erroneously argues that the claimed "one-piece end core" should be limited to the precise embodiment described in the specification at column 9, lines 38-62. The portions of the specification referenced by Buckeye are not necessary in order to understand the meaning of the claim term "one-piece end core," which is defined within the claim itself. There is no reason to limit the claimed cores to the specific embodiments described in the specification. *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995) ("[A] patent claim is not necessarily limited to a preferred embodiment disclosed in the patent."); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985) ("Generally, particular limitations or embodiments appearing in the specification will not be read into the claims."); *SRI Int'l, Inc. v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 n.14 (Fed. Cir. 1985) (in banc) (merely because "a

---

admission is glaringly absent from the copy of the slides incorporated directly in to Buckeye's Claim Construction Brief.

[5] The '986 patent is directed to lightweight sideframe castings, not cores. While Buckeye correctly notes that the '986 patent is incorporated by reference in the '564 patent because the '564 patent states that the sideframes disclosed in the '986 patent may be made in accordance with the principles of the '564 invention, Buckeye places undue reliance on the '986 patent to define "one-piece cores" when the one-piece cores are the subject matter of the '564 patent, not the '986 patent.

specification describes only one embodiment does not require that each claim be limited to that one embodiment"). The '564 patent specifically states that:

> "While only specific embodiments of the invention have been described and shown, it is apparent that various alternatives and modifications can be made thereto. For example, although the cores have been shown shaped to produce particular railway truck parts, it should be understood that changes in shapes may be made for other types of railway trucks, and the invention is not limited to the illustrated style of railway truck. In addition, although the invention has been described with respect to particular core structures for producing railcar truck parts, the principles of the invention may be applied to the production of other cast metal structures. It is, therefore, the intention in the appended claims to cover all such modifications and alternatives as may fall within the true scope of the invention." (Ex. A of Amsted's Claim Construction Brief, '564 patent, 25:10-23).

More importantly, as described in the Abstract and in the Summary of the Invention, there are many inventive aspects of the cores disclosed in the '564 patent, including but not limited to reducing the number of cores used to make sideframes and bolsters (Ex. A, '564 patent, Abstract; 2:58-67), providing step joints on cores for interlocking support without weight supporting chaplets (*Id.*, Abstract, 3:29-50), forming a locator boss on one or more cores for proper positioning of the core on the drag mold (*Id.*, Abstract, 3:9-13), providing a radial draft on the casting surrounding a bolt hole (*Id.*, Abstract, 4:23-35), and using core prints to support the cores on the drag mold surface where the core prints are connected to the core body through necks or bridges that define holes in the cast metal piece (*Id.*, Abstract, 4:46-53). The Detailed Description section of the '564 patent describes each of the inventive aspects separately. The specification culminates in 39 claims of the '564 patent, which address the various inventive aspects of the disclosure either singly or in combination. The plain language of claim 38 makes clear that claim 38 focuses on the inventive aspect relating to using necks to connect the core

prints to the core body to define holes in the sideframe. The Detailed Description describes this aspect of the invention at column 8, lines 3 through 36.

Ignoring the inventive aspects of the '564 patent other than core consolidation, Buckeye's interpretation of claim 38 improperly includes limitations from claims 1 and 3, which are not found in claim 38. Buckeye argues that the term "one-piece end core" means a core body having a pedestal portion, a diagonal member, a column portion, a top member portion, and a side window support. (Buckeye Br., pp. 23-25).

Under Buckeye's interpretation, the express reference to those various portions of a one-piece end core in claims 1 and 3 would be superfluous, redundant and meaningless if the term "one-piece end core" in those claims already included the described structure. As such, Buckeye's interpretation is legally erroneous. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1054-55 (Fed. Cir. 1988) (claim interpretation cannot render terms meaningless). The proper interpretation of "one-piece end core" is "a single, integral core located at or forming a part of the interior surface of the front or end of the sideframe casting." (Amsted's Claim Construction Br., pp. 12-13). The balance of each claim further describes the configuration of the claimed one-piece end core. Claims 1 and 38 describe that configuration in a different manner. The same holds true for claims 3 and 38.

There is no justification or support for importing all of the limitations from non-asserted claims 1 and 3 into asserted claim 38. The Patent Office allowed 39 different claims to issue in the '564 patent, several of which relate to the sideframe end core. Under Buckeye's approach, each of the sideframe end core claims have the same scope and relate to the same inventive aspect. This not only violates the doctrine of claim differentiation, but defies common sense as

well.[6] *Tandon Corp. v. United States Int'l Trade Comm'n*, 831 F.2d 1017, 1023 (Fed. Cir. 1987) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant.").

Buckeye also relies on a Declaration of Donald Lane for a definition of a one-piece end core. As an initial matter, Buckeye reads Mr. Lane's general declaration out of context. The fact that Mr. Lane conceived of making a sideframe with a pair of one-piece end cores, each having a pedestal portion, an integral diagonal member portion, and an integral column portion does not change the proper interpretation of the scope of claim 38. Mr. Lane's general declaration does refer to claimed elements of some, but not all, of the claims of the '564 patent. An inventor's statements regarding one scope of his invention do not necessarily coincide with the scope of any particular claim issued. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985-86 (Fed. Cir. 1995) (*in banc*), *aff'd*, 517 U.S. 370 (1996) ("It is not unusual for there to be a significant difference between what an inventor thinks his patented invention is and what the ultimate scope of the claims is after allowance by the PTO.").

The intrinsic record shows that the claimed "one-piece end core" is "a single, integral core located at and forming a part of the interior surface of the front or rear end of a sideframe casting. The balance of the claim further describes the configuration of the claimed one-piece end core." This proper interpretation properly takes into account that the claim language itself defines the claim. *See* pages 12-13 of Amsted's Claim Construction Brief.

---

[6] It is interesting to note that for purposes of the '564 patent, Buckeye argues that the "one-piece end core" should be limited to the embodiment disclosed in the specification. With respect to the

### 3.    Method Steps of Claim 38

As set forth in Amsted's Claim Construction Brief, the first four disputed terms should be interpreted as follows: (1) the step "providing a core to be received in the mold cavity" means providing a one-piece end core to be received in the mold; (2) the step "the core having a core outer surface" means the one-piece end core has an exterior surface; (3) the step "placing the core in the mold cavity" refers to placing the one-piece end core in the mold; (4) the step "separating the cast metal sideframe from the core" means separating the casting from the one-piece end core. The one-piece end core is defined later in the claim.

Buckeye alleges that the claimed manufacturing steps do not require the use of the one-piece cores which are described after the literal words "the improvement wherein." Buckeye's blind interpretation misses the whole point of the claims: a method of manufacturing a sideframe which uses, among other things, the one-piece cores described in the claims. Buckeye's arguments go astray by insisting on labeling claim 38 as a *Jepson* claim.

The claim must be read as a whole. *Gen. Foods Corp. v. Studiengesellschaft Kohle mbH,* 972 F.2d 1272, 1274 (Fed. Cir. 1992) ("each claim is an entity that must be considered as a whole"). Claim 38 is specifically directed to "a method of making a cast metal sideframe for a railway car truck." (Ex. A, '564 patent, 32:13-14). Thus, the method steps described within the claim are necessarily the subject matter of the claimed invention. Here, the method steps refer to various steps involving "a core", and the claim language clarifies that the core referenced in the method steps "comprises a one-piece end core" having various attributes described in the balance of the claim. This is confirmed by the '564 patent specification, which states that [t]he present invention includes the method of making cast steel sideframes, bolsters, and other cast metal

---

various core configurations described in the '114 patent claims, Buckeye apparently agrees with

bodies in accordance with known foundry principles, <u>using the new cores as described.</u> . . ." (Ex. A, '564 patent, 22:61-65). Judge Conlon's comments that "[t]**his core configuration. . . .cannot be separated from the method of production. Describing the core configuration is necessary to fully describe the claimed process,** and "**the core configuration creates a new process**" are completely consistent with the claim language and patent specification. *Amsted Industries, Inc. v. ABC-NACO Inc.*, 2001 U.S. Dist. LEXIS 10245 at *6 (N.D. Ill. 2001) (emphasis added). Tellingly, Buckeye relies solely on attorney argument and rhetoric, but points to no evidence, intrinsic or otherwise, supporting its interpretation of the method steps of claim 38.

### 4. "Top Member of Sideframe" and "Plurality of Lightener Openings"

Amsted understands that Buckeye interprets the "top member of sideframe" to mean "the top part of the railroad truck sideframe between the pedestal jaws of the sideframe." (Ex. J, Joint Claim Construction Statement, p. 4). Further, Buckeye interprets "plurality of lightener openings" to mean "more than one hole in the top member of the sideframe; the holes are not in the pedestal jaws." (*Id.*). Thus, Buckeye improperly attempts to define "plurality of lightener openings" as what it is <u>not</u>, instead of simply what it <u>is</u>. In short, Buckeye seeks a narrow interpretation of "top member" and "lightener openings" that will exclude the inclusion of lightener openings at the ends of a sideframe.

However, Buckeye's claim interpretation incorrectly eliminates the disclosed preferred embodiment. The '564 patent states that in the disclosed preferred embodiment, "[t]here are a plurality of openings in the cast metal walls 56, including lightener openings 58 in the top surfaces of the top member 24." (Ex. A, '564 patent, 7:36-38). This is shown in Figure 4 of the '564 patent.

---

Amsted that the claim language itself defines the meaning of the claimed core configuration.

Buckeye seeks an interpretation that the lightener opening 58 at the end of the sideframe (highlighted in yellow) is not a "lightener opening" in the "top member of the sideframe." This is clearly incorrect. As this Court noted in *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996), an interpretation that excludes the preferred embodiment "is rarely, if ever, correct." *See also Hoechst Celanese Corp. v. BP Chems., Ltd.*, 78 F.3d 1575, 1581 (Fed. Cir. 1996) ("[I]t is unlikely that



an inventor would define the invention in a way that excluded the preferred embodiment or that persons of skill in this field would read the specification in such a way."). Unlike Buckeye's proposed interpretations, Amsted's interpretation of "top member of sideframe" as meaning "the portion of the sideframe that extends lengthwise and includes the top portions of the sideframe" and Amsted's interpretation of "plurality of lightener openings" as meaning "areas or openings on the sideframe casting where metallic material has not formed during the casting process" is supported by the specification of the '564 patent.[7]

**B.  Claim 39**

Instead of offering reasons supporting its own claim construction of the disputed terms of claim 39, Buckeye focuses on arguments as to why Amsted's interpretation should be rejected. This is a blatant attempt to hide the lack of support in the intrinsic record for Buckeye's proposed interpretation of claim 39. Tellingly, Buckeye relies heavily on slides created by Buckeye's litigation/prosecution counsel, instead of the intrinsic evidence.

---

[7] Buckeye also incorrectly relies on portions of the '986 patent and file history as "invalidating" Amsted's claim interpretation. Tellingly, Buckeye makes no attempt to show that the prior art shown in the '986 patent includes each and every element of claim 38. Of course, it does not.

1.  **Buckeye Offers No Additional Support For Its Interpretation of the Method Steps**

Buckeye offers no explanation for its proposed interpretation of the method steps of claim 39 except for referencing its arguments with respect to the method steps of claim 38 of the '564 patent. For the reasons described above with respect to the method steps of claim 38, the method steps of claim 39 should be interpreted in accordance with Amsted's proposed claim construction.

2.  **Buckeye Fails To Offer Coherent Support For Its Proposed Interpretation of "One-Piece Center Core"**

Curiously, Buckeye also offers no explanation for its proposed interpretation of the claim term "one-piece center core," instead making the vague statement that "'one-piece center core' is also no different than the 'one-piece' limitation of claim 39." (Buckeye Br., p. 30). Buckeye further incoherently states that "[f]or similar reasons to those why 'one-piece' in relation to a sideframe end core means other than what Amsted contends, i.e., for those reasons being stated below in relation to the '114 patent, 'one-piece' in relation to a bolster center core means other than what Amsted contends." (Buckeye Br., p. 30). No explanation of Buckeye's proposed interpretation of "one-piece center core" is given.

It makes no sense for Buckeye to reference the arguments relating the "one-piece end core" of claim 38. Buckeye's arguments with respect to the "one-piece end core" of the method of manufacturing a <u>sideframe</u> in claim 38 do not translate into Buckeye's interpretation of the "one-piece center core" of the method of manufacturing a <u>bolster</u> in claim 39. For example, Buckeye's reference to the sideframe cores of Figure 15 of the '564 patent and Figure 6 of the '986 patent do not shed light on the meaning of a bolster center core. Similarly, Buckeye's

citation to claims 1 and 3 as well as its reliance on the specification discussion of sideframe end cores is completely irrelevant to the bolster "one-piece center core" of claim 39.

It also makes no sense for Buckeye to reference the arguments relating to the "one-piece" cores of the '114 patent. According to the Joint Claim Construction Statement, Buckeye's interpretation of "one-piece center core" in claim 39 is "a bolster center core having a core body that includes surfaces for defining the interior top, bottom and side walls of the bolster." (Ex. J, Joint Claim Construction Statement, p. 6). This definition is different than all of Buckeye's definitions of "one-piece center core" in the '114 patent.

In addition, with respect to both asserted claims of the '564 patent, Buckeye has taken the position that the claimed "one-piece" cores have a meaning other than the meaning expressly described in the claim. For example, Buckeye's definition requires that the one-piece center core has a "core body that includes surfaces for defining the interior top, bottom and sidewalls of the bolster" even though claim 39 is silent on these limitations. In a more consistent fashion based on the claim language itself, Amsted has established that for each of the claimed "one-piece cores" of the '564 and '114 patents, the claim language itself expressly provides the definition of the particular "one-piece core" for each different claim. Proper claim construction requires that the "one-piece center core" is defined by the balance of the claim language of claim 39. *Stryker Corp. v. Davol, Inc.*, 234 F.3d 1252, 1258 (Fed. Cir. 2000) (holding that the claim term "locator" was defined by the structure set forth by the plain language of the claim).

### 3. "Core Print"

Amsted and Buckeye both agree that the neck is the part of the core that corresponds with and forms the opening in the bolster casting. Amsted's interpretation of "core print" does not, as Buckeye contends, require the core print to form the opening of the bolster. Rather, the "core

print" is "an integral outward extension or protrusion from the outer surface of the one-piece center core that corresponds with an opening in the wall of the bolster and provides support and proper positioning of the one-piece center core in the mold." (Amsted's Claim Construction Brief, p. 13). That the center core "corresponds with" an opening in the wall of the bolster does not necessarily mean that the center core "forms" the opening. As described in Amsted's Claim Construction Brief at p. 13, the specification supports Amsted's interpretation. Buckeye offers no intrinsic evidence supporting its own proposed interpretation.

### 4.     "Neck Having a Perimeter Inward"

Buckeye complains that Amsted's interpretation of the claim term "neck having a perimeter inward" in claim 39 is not consistent with the '564 patent. It is noteworthy that, although Amsted interpreted the term "neck having a perimeter inward" exactly the same for claims 38 and claim 39, Buckeye does not dispute Amsted's interpretation of "neck having a perimeter inward" as to claim 38.

Buckeye contends that "neck having a perimeter inward of the core print body edge" means that "the neck of the core print has a perimeter that is less than the perimeter of the core print body." (Ex. J, Joint Claim Construction Statement, p. 6). Buckeye primarily relies on slides prepared by its prosecution/litigation counsel as support for its claim construction and as argument opposing Amsted's claim construction. Buckeye's slides rely on the assumption that prior art core prints include "necks." They do not. As explained above with respect to claim 38, Buckeye's claim interpretation requires equating a neck with the core print body itself. This renders the "neck" superfluous. The picture created by Buckeye's counsel on the top of page 34 of Buckeye's Brief shows a two-toned core print body with what Buckeye deems a "neck" highlighted in white and separated from the core print body by a dotted line. That "neck" is

purely the creation of Buckeye's counsel. Prior art cores did not include "necks." It is telling that Buckeye fails to cite to any <u>actual, non-fictional</u> prior art showing a "neck."

As described in Amsted's Claim Construction Brief at page 17, the language "neck having a perimeter inward of the core print body edge" of claim 39 literally means that the perimeter of the neck is <u>spaced away</u> from the core print body edge and toward the interior of the body of the one-piece center core. This is confirmed by the '564 patent specification, which states that "[t]he edges of the core print that mate with or meet the mold surface are <u>spaced beyond</u> at least a part of the circumference or perimeter of the bridge or neck. The circumference or perimeter of the neck or bridge defines the edge of the casting around the opening or hole so that the innermost part of the edge forms at a position <u>spaced from the juncture</u> of the core print and mold where a fin could form." (Ex. A, '564 patent, 4:44-51) (emphasis added).

At the conclusion of its claim 39 analysis, Buckeye suggests that there "may be a latent ambiguity and dispute as to the final phrases of claim 39, "the improvement wherein the core includes a core print . . . , with one neck corresponding with each hole in the sidewall of the bolster." (Buckeye Br., p. 38). Buckeye contends that this language means that there is a <u>single</u> core print having one or more necks corresponding to the holes in the sidewall of the bolster. (*Id.*) Buckeye's "understanding" violates fundamental principles of patent law.[8] While claim 39 certainly discusses a core including a core print, nowhere does claim 39 suggest that the core cannot have more than one core print. The fact that the claim acknowledges that the one-piece

---

[8] It is well-established that the presence of additional elements or features in the accused device will not exclude a finding of infringement. *Sun Tiger, Inc. v. Scientific Research Funding Group*, 189 F.3d 1327, 1336 (Fed. Cir. 1999). Similarly, use of the singular form of a word does not preclude a meaning which includes the plural. *See Elkay Mfg. Co. v. Ebco. Mfg. Co.*, 192 F.3d 973, 977 (Fed. Cir. 1999).

center core has "one neck corresponding with each hole in the sidewall of the bolster" does not

suggest in any way that only one core print may be included with each one-piece center core.

Indeed, it suggests the opposite. Furthermore, Buckeye's "understanding" has no merit in that

the preferred embodiment describes a one-piece bolster center core having two core prints 386,

one on each side of the core. (Ex. A, '564 patent, Figs. 32 and 33, 18:47-48 "Outboard of the

outer surfaces 384 are two core prints 386."). As discussed above, an interpretation that does not

encompass the preferred embodiment is rarely, if ever, correct. *Vitronics*, 90 F.3d at 1583;

*Hoechst Celanese*, 78 F.3d at 1581.

## II.     The '114 Patent

### A.     Claim 1

#### 1.     Method Steps

Buckeye incorrectly relies on its arguments with respect to the method steps of claims 38

and 39 to argue that the method steps recited in method claims 1 and 6 of the '114 patent are

"conventional." As explained above with respect to claim 38, claims 1 and 6 recited methods of

manufacturing using the unique one-piece core described in the claim.

#### 2.     "One-Piece Center Core"

Like Amsted, Buckeye contends that the "one-piece center core" "is defined by the claim

itself." However, Buckeye's claim construction does not follow the language of claim 1 in its

entirety. For example, Buckeye fails to include the requirement that the claimed surfaces be

located inboard of the friction shoe pockets and on both sides of the central transverse plane of

the bolster. More importantly, Buckeye's definition ignores the words "one-piece" in "one-piece

center core." The core of claim 1 must be a single, integral core located at and forming a center

portion of a bolster casting. Buckeye cannot properly pick and choose the elements that it wishes to include in the claim construction.

### 3. "Central Transverse Plane"

Buckeye contends that the "central transverse plane" is a plane extending across the bolster and located between the pairs of friction shoe pockets. (Ex. J, Joint Claim Construction Statement, p. 12). Buckeye errs in stating that the central transverse plane is "a plane that is located somewhere between the pairs of friction shoe pockets." (Buckeye Br., p. 42). Buckeye's definition improperly ignores the words "central" and "transverse." As explained in Amsted's Claim Construction Brief at page 22, a "central transverse plane" indicates that the plane extends in a crosswise direction ("transverse") through the center of the bolster. These arguments apply to claims 1, 9 and 20.

### 4. "Surface for Defining At Least A Part Of The Bottom Wall"

Buckeye now submits that the parties' disagreements over the term "surface for defining at least a part of the bottom wall" are over distinctions without a difference. As such, Amsted's proposed interpretation should control which is supported by the plain meaning of the claim as described on page 23 of Amsted's Claim Construction Brief.

### B. Claim 2

Buckeye submits that the parties' dispute over the meaning of the term "entire interior surfaces" is without distinction. As such, Amsted's interpretation, which is set forth on page 23 of Amsted's Claim Construction Brief, should be adopted.

### C. Claim 4

Like Amsted, Buckeye contends that the term "one-piece end cores" is defined by the claim itself. However, Buckeye incorrectly fails to take in to account that the term "one-piece"

within "one-piece end cores." As set forth in Amsted's Claim Construction Brief at page 24, the "one-piece end cores" means single, integral cores located at and forming end portions of a bolster casting, while the balance of the claim describes the particular configuration of the end cores. This analysis also holds true for the "one-piece end cores" of claims 6, 7, 11, 15 and 16.

### D.    Claim 5

Buckeye offers no rebuttal to Amsted's proposed interpretation of the term "core prints," instead merely reciting its own proposed definition. For the reasons set forth in Amsted's Claim Construction Brief at pp. 24-25, "core prints" should be interpreted consistently with Amsted's definition, which is supported by the specification.

### E.    Claim 9

As discussed above with respect to the method steps of claims 38 and 39 of the '564 patent as well as claims 1 and 6 of the '114 patent, the recited method steps must be interpreted with reference to the particular one-piece center core having the characteristics described in the balance of the claim. *See also* Amsted's Claim Construction Brief, pp. 31-32. Buckeye offers no support for its own interpretation of the method steps.

Buckeye contends that the "bolster central longitudinal plane" is a plane extending along the length of the bolster and located between the sidewalls of the bolster. (Ex. J, Joint Claim Construction Statement, p. 15). Buckeye errs in stating that the bolster central longitudinal plane must be "located somewhere between the sidewalls such that the plane extends through both outboard ends of the bolster." (Buckeye Br., p. 45). Buckeye's definition improperly ignores the word "central." As explained in Amsted's Claim Construction Brief at page 33, a "bolster central longitudinal plane" indicates that the plane extends in a lengthwise direction

18

("longitudinal") through the center of the bolster. These arguments apply to claims 9, 15, and 20.

### F. Claim 10

Buckeye submits that the parties' dispute over the meaning of the term "exterior surfaces" is without distinction and does not offer any support for its interpretation. As such, Amsted's interpretation, which is set forth on page 34 of Amsted's Claim Construction Brief, should be adopted.

### G. Claim 20

Buckeye takes issue with Amsted's interpretation of the term "positioned in the mold between an in contact with the one-piece end cores" because, in Buckeye's view, the term "in contact with" does not require touching. Buckeye's understanding of the term "contact" thus conflicts with the ordinary meaning of the word. Indeed, Webster's Third New International Dictionary (1986), p. 490, defines "contact" as meaning "to press against: meet; touch." (Ex. 3).

Moreover, Buckeye's alternate argument that "in contact with" requires "interlocking touching" is unsupportable. Nothing in the claim language indicates that the "contact" be interlocking. Buckeye's litigation-induced interpretation must be rejected as unsupportable on this intrinsic record.

## III. Conclusion

For the reasons set forth above and in Amsted's Claim Construction Brief, this Court should interpret the disputed claims in accordance with Amsted's proposed definitions. Buckeye's Claim Construction, while chock full of rhetoric and threats of patent invalidity, is devoid of substance and proper analysis.

Respectfully submitted,

Dated: October 18, 2002

Gregory J. Vogler
Sharon A. Hwang
Sandra A. Frantzen
McANDREWS, HELD & MALLOY, LTD.
500 West Madison Street
Chicago, Illinois 60661
312/775-8000

*Attorneys for Plaintiff*
AMSTED INDUSTRIES INC.

Of Counsel:
Edward J. Brosius
AMSTED Industries Inc.
44th Floor - Boulevard Towers South
205 North Michigan Avenue
Chicago, Illinois 60601

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing **AMSTED'S CLAIM CONSTRUCTION REPLY BRIEF** was served by hand delivery on this 18th day of October, 2002 on:

Charles W. Shifley, Esq.
Marc S. Cooperman, Esq.
Scott A. Burow, Esq.
**Banner & Witcoff, Ltd.**
10 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606

SEE CASE
FILE FOR
EXHIBITS